**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:11CV-00033-JHM**

**CINDY SHADRICK, Administrator of the Estate**
**of Tyler Butler, deceased**                                    **PLAINTIFF**

**v.**

**SOUTHERN HEALTH PARTNERS, INC.**                    **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on various motions in limine filed by Defendant Southern Health Partners [DN 157] and by Plaintiff [DN 161]; on Defendant's objection to Plaintiff's witness list [DN 158] and exhibit list [DN 159]; on Plaintiff's objection to Defendant's witness list [DN 162] and exhibit list [DN 160]; on a motion by Defendant to strike Plaintiff's untimely <u>Daubert</u> motions [DN 167]; and on a motion by Defendant for leave to supplement its witness list DN 166].   Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

This case involves the death of Mr. Tyler Butler on April 11, 2010 at the Henderson County Detention Center ("HCDC").   HCDC contracted with Southern Health Partners ("SHP") to provide medical services for its inmates.   SHPS separately contracted with Dr. Henry Davis to act as HCDC medical director.   Davis was not a SHP employee.   SHP employed nurses and other medical personal at HCDC.   On April 8, 2010, Butler entered the jail to serve a short sentence for a misdemeanor offense.   He died three days later.

The Plaintiffs initially filed suit against Hopkins County, various HCDC employees, Southern Health Partners, Inc., Henry Davis, M.D., Nurse Candace Moss, Nurse Renee Keller,

Nurse Betty Dawes, and Nurse Angela Pleasant. Plaintiff, Cindy (Jimenez) Shadrick, Administratrix of the Estate of Tyler Butler, brought the action pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated Butler's rights under the Eighth, Tenth, and Fourteenth Amendment to the Constitution of the United States by acting with deliberate indifference to his serious medical needs while he was an inmate in HCDC.   Plaintiff also asserted state law claims for negligence, gross negligence, and the tort of outrage arising from the same conduct.

After conducting discovery, the parties filed summary judgment motions. In response to these motions, the Court entered a Memorandum Opinion and Order [DN 112] granting summary judgment in favor of Defendants, Southern Health Partners, Betty Dawes, Angela Pleasant, Joe Blue, Jeremy Witherspoon, and Angela Peterson. Later, on May 8, 2014, the Court acknowledged the Plaintiff's acceptance of an offer of Judgment against Defendants Candace Moss and Renee Keller.   Similarly, on May 9, 2014, the Court entered an Agreed Order of Dismissal of the Claims as Settled against Hopkins County, Jessica Bennett, Teressa Kreitler, Eric Poe, and Diana Potocnick [DN 134].

Plaintiff appealed the Court's grant of summary judgment in favor of SHP.   The Sixth Circuit reversed the grant of summary judgment in favor of SHP on the § 1983 claim for failure to train or supervise its LPN nurses and on the negligence claim. Shadrick v. Hopkins County, Kentucky, 805 F.3d 724 (6th Cir. 2015).   Specifically, the Sixth Circuit held that Plaintiff "met SHP's summary judgment motion with evidence that SHP's training program is inadequate for the tasks the LPN nurses are required to perform, that the inadequacy resulted from SHP's deliberate indifference, and that the inadequacy actually caused, or was closely related to, Butler's injury." Id. at 744.   Pursuant to the Scheduling Order, the parties have now filed various motions in limine and objections. The Court will consider them below.

2

## II. DISCUSSION ON MOTIONS IN LIMINE

**A. Motions in Limine by Defendant Southern Health Partners, Inc. [DN 157]**

**1. Exclude Medical Testimony Not Stated in Terms of "Probability"**

Defendant Southern Health Partners states that the Plaintiff may seek to introduce testimony which infers that negligence or causation on the part of Defendant was a "possibility" rather than a "probability." Plaintiff moves the Court to preclude any such testimony. In support, Defendant cites the principle that a plaintiff in a negligence action must prove that it is more likely than not that the plaintiff's injury was caused by the defendant's negligence. See Sakler v. Anesthesiology Assocs., P.S.C., 50 S.W.3d 210, 213−14 (Ky. App. 2001).   Defendant argues that allowing a reference to "possibility" would unfairly influence a jury's determination on whether the Plaintiffs met their ultimate burden of proof.

Plaintiff does not oppose this portion of the motion in limine to prohibit medical testimony stated in terms of "possibility," "not probability," on *direct examination*. Thus, the motion with respect to direct examination is **GRANTED.**   However, Plaintiff contends that the remainder of the motion is best addressed by objections at trial and instructions to the jury.   Plaintiff contends that requesting the Court to enter a preemptive order that would arguably bar any testimony regarding "chance" or "possibility" on *cross*-examination goes too far and is too undefined and ambiguous.   Plaintiff argues that counsel is not entitled to a "safety net" to protect them from asking a question in cross-examination that fairly opens the door to such opinions.   The Court agrees with Plaintiff.   Because "[o]rders in limine which exclude broad categories of evidence should rarely be employed," Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975), Defendant's motion with respect to cross-examination is **DENIED**.   Any such objections are better left for trial.

3

### 2. Exclude Punitive Damages Testimony

Defendant next argues that the Court should not allow the Plaintiff to introduce any evidence regarding punitive damages against it because Plaintiff has not shown that Southern Healthcare Partners exhibited a "wanton or reckless disregard" to Mr. Butler's life or safety. See Williams v. Wilson, 972 S.W.2d 260, 263 (Ky. 1998) (noting that for a punitive damages award, "there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by a 'wanton or reckless disregard for the lives, safety, or property of others'"). According to Defendant, neither the expert witness disclosures of the Plaintiff's experts, nor their deposition testimony, contain opinions that the Defendant's actions were willful, wanton, malicious, grossly negligent, or reckless.   Additionally, Defendant argues that KRS § 411.184(3) does not permit punitive damages to be assessed against an employer for the act of an agent or employee unless the employer "authorized or ratified or should have anticipated the conduct in question."   The Court declines to exclude this evidence at this time. The Court finds that the better approach is to consider the issue of whether a punitive damages instruction should be submitted to the jury after it has heard all the evidence. Defendant's motion with respect to this issue is **DENIED**.

### 3. Exclude Standard of Care Testimony from Witnesses not Disclosed as Experts

Defendant moves the Court to prohibit medical opinion testimony by any witnesses who have not been disclosed as experts. Plaintiff does not oppose this portion of Defendant's motion. Thus, the motion is **GRANTED** with respect to this issue.

### 4. Exclude Clips or Sound Bites from Depositions without Having to Provide Context

Defendant moves the Court to prohibit Plaintiffs from playing "snippets" or reading portions of depositions without having to provide context for those portions. In support, Defendant

4

cites <u>Owensboro Mercy Health Sys. v. Payne</u>, 24 S.W.3d 675, 678–79 (Ky. App. 1999), for the proposition that courts should avoid presenting evidence out of context that can confuse issues or mislead a jury. Plaintiff does not oppose this portion of Defendant's motion as it relates to precluding the introduction of any clips or sound bites from depositions in *opening statements*. Thus, the motion is **GRANTED IN PART** with respect to opening statements.

To the extent that Defendant's motion goes to the use of deposition testimony or transcripts as impeachment, the Court finds that Plaintiff cannot be expected to anticipate, at this time, what portions of depositions might have to be utilized for impeachment purposes. Therefore, this objection is better left for trial.

### 5. Exclude Testimony that Defendant is Insured against Liability

Defendant moves the Court to preclude the Plaintiff from introducing any evidence regarding liability insurance coverage.   In support, Defendant notes that evidence of the existence of liability insurance is not admissible under Fed. R. Evid. 411 when it is offered to prove that a defendant acted negligently or wrongfully. The Plaintiff does not oppose Defendant's motion with respect to this issue. As such, it is **GRANTED**.

### 6. Exclude Expert Testimony beyond Discovery Depositions or Disclosures

The Plaintiff has disclosed Madeline LaMarre and Deirdre Schluckebier as experts in this matter. Defendant moves the Court to exclude any expert testimony at trial which exceeds the scope of these experts' reports or discovery depositions.   According to Defendant, to permit further opinion testimony at trial beyond which might exceed the scope of their expert reports or discovery depositions would unduly prejudice Defendant.   Plaintiff responds that this is an issue better handled by objections at trial.   Additionally, Plaintiff states that counsel are not entitled to a "safety net" to protect them from asking a question in cross-examination that fairly opens the door

to additional opinions.

Generally, the Court agrees with Defendant that experts must testify within the scope of their expert reports or discovery depositions. This principle is implicit in Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(1), which "require disclosures **in advance of trial** of the bases and reasons for an expert's opinions." See Asher v. Unarco Material Handling, Inc., 2008 WL 2596612, at *2 (E.D. Ky. June 25, 2008) (emphasis added). However, objections related to the scope of an expert's testimony are better left for trial. Thus, Defendant's motion is **DENIED**.

### 7. Exclude Testimony regarding the Financial Condition of the Parties

Defendant moves the Court to prohibit testimony regarding any party's current financial condition. In support, Defendant cites Kentucky law that "the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 916 (Ky. 1998). The Plaintiff does not oppose this portion of Defendant's motion. As such, the motion is **GRANTED** with respect to this issue.

### 8. Exclude Introduction of Expert Reports into Evidence

Defendant moves the Court to prohibit the admission of any expert reports into evidence in this case.  In support, Defendant notes that such reports are inadmissible because they are considered hearsay. See Wright v. Premier Elkhorn Coal Co., 16 S.W.3d 570, 572 (Ky. App. 1999).  The Plaintiff does not oppose this portion of Defendant's motion. Accordingly, it is **GRANTED**.

### 9. Exclude Family Photographs and Videos from the Trial

Defendant moves the Court to exclude family photographs and videos from trial. According to Defendant, the fact that Mr. Butler has a family "is completely inconsequential to those allegations of negligence," and the "only thing that these photographs can do is inflame the

6

jury, making them feel sorry for Mr. Butler and his family." (Def. Mots. in Limine [DN 157] 7.)

The Plaintiff does not indicate an intent to introduce a family video.   However, according to the Plaintiff, the jury is entitled to see photographs of Mr. Butler in order to see what he looked like (and, specifically, to show that Mr. Butler was a living human being). Further, Plaintiff argues that there should be no prohibition against Plaintiff introducing just one picture of her son taken in better times as she remembers him.   The Court agrees.

Kentucky courts have often permitted the introduction of life photographs of victims to prove that the victims were living persons. See, e.g., Tamme v. Commonwealth, 973 S.W.2d 13, 36 (Ky. 1998) (permitting the victims' mothers to introduce life photographs of their deceased sons).   Defendant's motion on this issue is **DENIED**.

**10. Exclude Introduction of Dr. Davis' Compensation as Medical Director at Hopkins County Regional Jail (Or Any of the Other Jails where Dr. Davis Served as Medical Director) and to Exclude the Number of Jails where Dr. Davis Worked as Medical Director**

Defendant moves the Court to prohibit any testimony from Plaintiff regarding Dr. Davis' compensation as the Medical Director at the Hopkins County Regional Jail (or any of the other jails where he served as the Medical Director). Defendant further moves the Court to prohibit testimony from the Plaintiff regarding the number of jails where Dr. Davis worked as a Medical Director.   The Plaintiff does not oppose this portion of Defendant's motion. As such, the motion is **GRANTED** with respect to this issue.

**11. Exclude Evidence of Other Lawsuits**

Defendant moves the Court to prohibit any evidence that it may have been named as a Defendant in other medical malpractice cases. According to Defendant, any efforts to introduce such evidence "would be sorely misguided and would amount to nothing more than impermissible

character evidence" which is prohibited under Fed. R. Evid. 404(b). (Def.'s Mots. in Limine [DN 157] 9.) The Plaintiff counters that such evidence should not be prohibited at trial, as it is relevant to show that Defendant (1) has persistent and widespread customs and practices that render its written policies and procedures a nullity, and (2) is only one of many cases in which Defendant had notice of but repeatedly failed to make any meaningful investigation into claims of medical neglect by its employees.   Plaintiff contends that Defendant's practice of staffing jails primarily with nurses unfamiliar with its written policies and practices, unsupervised by an "absentee medical director, has caused numerous deaths and near-deaths in jails throughout Kentucky.   Further, Plaintiff argues that this evidence is also relevant to the issue of punitive damages.

In the present case, the Sixth Circuit provided in part that

> Shadrick can demonstrate SHP's failure to provide LPN nurses with adequate training and supervision in one of two ways. She can show "[a] pattern of similar constitutional violations by untrained employees" and SHP's "'continued adherence to an approach that [it] knows or should know has failed to prevent tortious conduct by employees,'" thus establishing "the conscious disregard for the consequences of [its] action—the 'deliberate indifference'—necessary to trigger municipal liability." Connick, 131 S.Ct. at 1360 (quoting Bryan Cnty., 520 U.S. at 407, 117 S.Ct. 1382). Alternatively, Shadrick can establish "a single violation of federal rights, accompanied by a showing that [SHP] has failed to train its employees to handle recurring situations presenting an obvious potential" for a constitutional violation. Bryan Cnty., 520 U.S. at 409, 117 S.Ct. 1382.

Shadrick v. Hopkins Cty., Ky., 805 F.3d 724, 738-39 (6th Cir. 2015). The Sixth Circuit reversed the Court's grant of summary judgment on the "recurring situation" theory finding that "a reasonable jury could find that the potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting is so obvious that [SHP's] failure to provide adequate training and supervision to those nurses constitutes deliberate indifference to the risk." Id. at 739-740.   Significantly, the Sixth Circuit further provided that

8

> Although we do not address Shadrick's argument that a pattern of tortious or unconstitutional conduct by inadequately trained nurses existed, see <u>Bryan Cnty.</u>, 520 U.S. at 407–08, 117 S.Ct. 1382; <u>Burgess</u>, 735 F.3d at 478, evidence about similar incidents of inmate deaths in jail facilities served by SHP may be relevant to whether SHP acted with deliberate indifference to the medical needs of inmates with whom its nurses came into contact at HCDC. This is a trial issue for the district court to resolve on remand. We do not address Shadrick's contention that SHP management ratified the conduct of its nurses.

<u>Shadrick</u>, 805 F.3d at 744.   Therefore, in pursuing a pattern theory of constitutional violations, evidence of similar incidents of inmates' deaths in jails served by SHP is relevant to whether SHP acted with deliberate indifference to the medical needs of Butler.   Thus, while the incidents of these deaths or near-deaths, along with SHP's investigation and changes in training, is relevant, the fact that lawsuits were filed in those instances is not relevant. For these reasons, the Defendant's motion to exclude the fact that Defendant was named as a Defendant in other lawsuits is **GRANTED**.

However, evidence of other lawsuits may be used as impeachment if Defendant opens the door to such an inquiry by arguing that SHP was not aware of the deaths of other inmates.   In the event Plaintiff believes Defendant's witnesses have opened the door to such questioning, counsel shall first seek permission from the Court before addressing any questions along these lines.

### 12. Exclude Evidence of "Chance" or "Possibility" Pertaining to Mr. Butler's Survival

Defendant moves the Court to preclude the Plaintiffs from arguing or otherwise offering any evidence from their expert witnesses of "chances of survival," "possibilities," or other hypothetical interventions or courses which may have changed the outcome in this case. Defendant bases this motion on the fact that Kentucky has declined to recognize the doctrine of "loss of chance." <u>See</u> <u>Kemper v. Gordon</u>, 272 S.W.3d 146, 153 (Ky. 2008). Defendant also bases this motion on the fact that the Plaintiff has the burden to prove the elements of negligence within

a reasonable degree of medical probability. See Sakler v. Anesthesiology Assocs., P.S.C., 50 S.W.3d 210, 213 (Ky. App. 2001).

As a general matter, the Court agrees with Defendant. Kentucky has declined to recognize the doctrine of "loss of chance," and all opinions related to medical negligence must be stated within a reasonable degree of medical probability. However, Defendant's motion is overly broad to rule on in limine. Thus, all such objections shall be made at trial. Defendant's motion as to this issue is **DENIED**.

### 13. Exclude Evidence or Arguments that Dr. Davis was the "Captain of the Ship" and/or that He Bore "Ultimate" Responsibility for Mr. Butler's Care and Treatment

Defendant moves the Court to preclude the Plaintiff from offering any testimony that Dr. Davis was the "captain of the ship" or that he bore "ultimate responsibility" for the acts and/or omissions of other persons (i.e. the employees of the Hopkins County Regional Jail or Southern Health Partners).   In support, Defendant notes that Kentucky courts do not recognize the validity or legal viability of the "captain-of-the-ship doctrine." See Tucker v. Women's Care Physicians of Louisville, P.S.C., 381 S.W.3d 272, 277 (Ky. 2012). The Plaintiff does not oppose this portion of Defendant's motion. Accordingly, it is **GRANTED**.

### 14.   Motion in Limine to Preclude Articles Referencing This Case or Other Acts of This Moving Defendant

Defendant moves the Court to preclude the Plaintiff from offering any testimony or otherwise mentioning the existence of any journalism, television or radio reports, articles, or any other such media or multi-media materials with regard to this case or other prior acts of the Defendant.   The Plaintiff does not oppose the portion of the motion to exclude published articles concerning past instances of Defendant's misconduct.   According, Defendant's motion with respect to this issue is **GRANTED**.

10

**15.   Motion in Limine to Preclude Testimony that Tyler Butler Could Have or Would Have Continued Working upon His Release**

Defendant moves the Court to preclude testimony that Plaintiff could have or would have continued working upon his release from jail had he survived.   In support, Defendant argues that Plaintiff's two medical experts did not offer opinions in their written reports or testify in their depositions within a reasonable degree of medical probability (or economic probability) that Plaintiff could or would be able to work upon release. In response, Plaintiff maintains that evidence of permanent injury/death alone is sufficient for an instruction on permanent impairment of earning power in Kentucky. Turfway Park Racing Association v. Griffin, 834 S.W.2d 667, 670 (Ky. 1992).   The Court agrees with Plaintiff.

The Kentucky Supreme Court in Turfway Park noted that "it is unnecessary to submit evidence of the decedent's power to earn money to sustain the jury verdict for its destruction." Turfway Park, 834 S.W.2d at 670 ("damages flow naturally from the wrongful death of a person unless there is evidence from which the jury could reasonably believe that the decedent possessed no power to earn money" id. at 671). Similarly, the Kentucky Supreme Court in Reece held that "[w]e hold that evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power, and that the jury can through their common knowledge and experience make the determination if there has been a permanent impairment of earning power, the extent of such impairment, and the amount of damages for such impairment." Reece v. Nationwide Mut. Ins. Co., 217 S.W.3d 226, 229 (Ky. 2007). "While specific expert witness testimony on permanent impairment of earning power is helpful and often persuasive, see Louisville Metro Hous. Auth. v. Burns, 198 S.W.3d 147, 151 (Ky. App. 2005), it is not necessary to submit the issue of permanent impairment of earning power to the jury." Reece, 217 S.W.3d at 229; see also

11

<u>Louisville & N.R. Co. v. Holloway's Adm'r,</u> 181 S.W. 1126, 1130 (Ky. Feb. 3, 1916)("The jury in this case had before them, and had the right to consider in determining the pecuniary loss sustained by the widow, the earning capacity, age, health, habits, character, occupation, expectancy of life, and mental and physical disposition to labor of the deceased.").   Given this case law, the Defendant's motion in limine on this issue is **DENIED**.

### 16.   Motion in Limine to Exclude any Evidence of an Offer of Judgment Accepted and Entered Against Nurses Candace Moss and Renee Keller

Defendant seeks to exclude evidence of a Judgment entered against SHP Defendants Candace Moss and Renee Keller on May 8, 2014 [DN 133] which was based on their Offer of Judgment [DN 123] accepted by Plaintiff on March 29, 2014 [DN 127].   Defendant represents that the Judgment merely formalized a settlement agreement between the participating parties pursuant to Fed. R. Civ. P. 68.   Defendant argues that the judgment is irrelevant, unfairly prejudicial, and otherwise violates Fed. R. Evid. 408.   In response, Plaintiff states that she wants to introduce the Offer of Judgment that was *accepted*.   Plaintiff argues that she should be permitted to inform the jury at the outset of the Judgment in order to notify the jury that employees of Defendant were sued and a judgment was entered against them in an effort to foreclose any claim by Defendant that none of its employees did anything wrong.

The fact that Moss and Keller settled with Plaintiff before trial is not relevant to the claims against Defendant.   Initially, it should be noted that there is no evidence to indicate that Moss and Keller admitted liability or fault when they settled.   The Offer of Judgment specifically states that it "is not to be construed as an admission of fault on the part of the SHP Defendants." [DN 123]. Evidence of settlement negotiation and agreement is generally inadmissible for any purpose under Rule 408 of the Federal Rules of Evidence, including proving liability for, or invalidity of, the

12

claim or its amount. Plaintiff seeks to demonstrate SHP Defendants Moss and Keller's liability for the claims asserted against them in an effort to prove that Defendant is liable for the alleged wrongdoing of the nurses. Rule 408 does not permit such use of a settlement.   Finally, even if relevant, the probative value of the judgment against SHP Defendants Moss and Keller is substantially outweighed by unfair prejudice towards Defendant pursuant to Fed. R. Evid. 403. Accordingly, the motion in limine is **GRANTED**.

**B. Motions in Limine by Plaintiff [DN 161]**

    **1. Exclude Written Reports of Defendant's Experts**

    Plaintiff moves the Court to prohibit the admission of any expert reports into evidence in this case.   In support, the Plaintiff suggests that such evidence will be cumulative of the experts' trial testimony. Plaintiff also notes that such reports are inadmissible because they are considered hearsay.   In response, Defendant oddly challenges the motion despite having made the exact same motion in its motions in limine.   Defendant argues that there are circumstances under which an expert report could be admitted into evidence such as to demonstrate prior inconsistent statements, for impeachment, and to rehabilitate SHP's own experts' credibility.   Defendant also notes that SHP's experts can refer to their reports, the reports of other experts, and other documents during the course of their testimony at trial.

    The written reports of expert witnesses prepared in anticipation of trial are generally inadmissible because they are considered hearsay. Wright v. Premier Elkorn Coal Co., 16 S.W.3d 570, 572 (Ky. App. 1999); Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir.1994) (citing Fed. R. Evid. 702 & 703). "Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion. Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of

the matters they contain if the materials are otherwise inadmissible." Id. at 728.   Here, the experts may testify, and be subject to impeachment, concerning the contents of his/her report, but the report itself will not be admitted as an exhibit for submission to the jury.   The Court will consider on an ad hoc basis requests at trial to submit charts, graphs, or other material contained therein. Thus, as to these written reports, the Plaintiff's motion is **GRANTED**.

### 2. Exclude Testimony that Defendant or its Nurses Conduct Were "Not Liable," were not "Negligent" or "Deliberately Indifferent"

The Plaintiff moves the Court to exclude any testimony that the Defendant or its nurses' conduct were not liable, were not negligent, or not deliberately indifferent. In support, Plaintiff notes that deliberate indifference is a legal term involving issues of state of mind that can be resolved only by a jury. See Berry v. City of Detroit, 25 F.3d 1342, 1353–54 (6th Cir. 1994). Further, Plaintiff cites Davis v. Roane County, 2015 WL 6738174 (E.D. Tenn. Nov. 4, 2015) for the proposition that a medical expert is not permitted to testify to Defendant's liability. In response, Defendant agrees that witnesses are not permitted to testify that SHP was or was not negligent or deliberately indifferent because those statements invade the province of the jury.

But as the Defendant notes, SHP's experts are permitted to testify as to the standard of care for SHP and that its staff did not violate the standard of care.   Further, experts are certainly entitled to opine to the reasonableness or unreasonableness of a witness's action in light of their admitted testimony.

Based upon the foregoing, the court finds that the experts may not testify as to whether in their opinion the Defendant's alleged conduct constituted deliberate indifference or negligence toward the Plaintiff.   But as the Defendant notes, the experts may testify, however, what constitutes the standard of care in the present case, whether in their opinion the Defendant's

14

alleged conduct was contrary to or violated the appropriate standard of care, and whether in their opinion the alleged actions of the Defendant violated jail policy or procedure. See Davis v. Roane Cty., Tenn., 2015 WL 6738174, at *4 (E.D. Tenn. Nov. 4, 2015)(expert "may testify regarding the nature, extent, and quality of the medical care [the prisoner] received and opine regarding the effect and cause of her death."); Rose v. Sevier County, Tenn., 2012 WL 6140991, *6 (E.D. Tenn. Dec. 11, 2012); Finn v. Warren County, Ky., 2012 WL 3067376, *4-5 (W.D. Ky. July 27, 2012). Furthermore, generally, an expert's opinion regarding whether certain facts or information is or is not important in their analysis is "best addressed through vigorous cross-examination."  Davis, 2015 WL 6738174, *7 ("as to Defendants' claims that she ignored the facts of this case, the Court feels that such factual matters, the weight or lack of weight she assigned to them and the effect, if any, on her opinions are best addressed through vigorous cross-examination.").   Accordingly, the Plaintiff's motion in limine on these issues is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.

### 3.   Exclude Evidence or Argument that Mr. Butler did not Suffer a Fatal Injury due to his Confinement in the Hopkins County Detention Center.

Plaintiff moves the Court to exclude any evidence or argument that Mr. Butler did not suffer a fatal injury due to his confinement in the Hopkins County Detention Center.   In support, Plaintiff notes that to establish common law negligence under Kentucky law, the Plaintiff must prove by a preponderance of the evidence that "(1) a duty of care owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."  Vincent v. Warren County, 629 Fed. Appx. 735 (6th Cir. 2015).   According to Plaintiff, there is no dispute that Mr. Butler "suffered a fatal injury during his confinement at the jail." Id.   In Plaintiff's trial brief [DN 179], Plaintiff expands on this

15

argument more by indicating that there is no issue as to causation. Plaintiff suggests that there is no evidence that Mr. Butler would have died had he not been incarcerated in the HCDC and dependent upon Defendant's care.   (Plaintiff's Trial Brief at 4.)

The Court disagrees.   While it is undisputed the Plaintiff died while incarcerated at the HCDC, there is a genuine dispute as to whether there was a breach of duty, an injury, or whether the injury was caused by Defendant's actions.   Defendant represents that it will produce evidence that Mr. Butler received appropriate care during his confinement at HCDC and that his death was caused by myocarditis, not an injury. There is a genuine dispute of material fact regarding whether Mr. Butler suffered a fatal injury due to his confinement in the HCDC.   Accordingly, this motion to dismiss is **DENIED**.

### 4.   **Exclude Evidence or Argument that Mr. Butler Had Previously-Unknown Medical Condition that was the Cause of Death**

Plaintiff moves the Court to exclude any evidence or argument that Mr. Butler had a previously-unknown medical condition that was the cause of his death, without excluding his illness during his incarceration as a contributory cause.   For the reasons set forth below in Section III, this motion in limine is **DENIED**.

### 5. **Exclude Testimony or Argument Concerning Standard Correctional Health Practices or "Standard of Care" that Impose Lesser Duties than the Defendant's Written Policies and Procedures**

The Plaintiff moves the Court to exclude any testimony or argument regarding any standard correctional health practices or "standard of care" that impose lesser duties than the Defendant's written policies and procedure.   Plaintiff also raises this same argument in her Objections to Defendant's Expert Witnesses [DN 162].   According to the Plaintiff, Defendant should not be allowed to introduce evidence that standard correctional health practices, laws, or

regulations allowed it to do less than what was required by its own policies.   In support, Plaintiff maintains that Defendant's policies and procedures for the medical care of inmates at the jail wasn't just a policy – but had the force of law pursuant to KRS § 441.045(1), (3).

The Court disagrees.   In this case, it is the jury's task to decide whether the policies and procedures of Southern Health Partners comply with or represent the standard of care. The Sixth Circuit has repeatedly recognized that while internal regulations and standard operating procedures are relevant in considering the scope of the duty of care owed, they do not necessarily create or define the precise scope of the duty owed. See Keir v. United States, 853 F.2d 398, 413–14 (6th Cir. 1988); Estes v. King's Daughters Med. Ctr., 59 Fed. Appx. 749, 756–57 (6th Cir. 2003). As noted by the Sixth Circuit in addressing whether policies adopted pursuant to KRS § 441.025 can support a claim of negligence *per se* in Finn v. Warren County:

> this court has previously held under Kentucky law that a prison's internal operating procedure "is not a regulation from which negligence for violation should arise *per se*." Flechsig v. United States, 991 F.2d 300, 304 (6th Cir.1993). To hold that it is would "create a disincentive" and cause the jail "to adopt as procedures only what is legally required." Id.

Finn v. Warren County, 768 F.3d 441, 451 (6th Cir. 2014). The Plaintiff's motion is **DENIED** as to this issue.

### 6.   Exclude Any Opinions of SHP's Experts on Direct Examination That Were Not Expressed within the "Four Corners" of their Written Reports

Plaintiff requests the Court to prohibit Defendant's experts from testifying to opinions on direct examination that were not expressed in their report. In support, Plaintiff argues that Fed. R. Civ. P. 26 requires a complete statement of all opinions an expert witness will express. Plaintiff states that it elected not depose Defendant's experts and therefore, Defendant should not be permitted to solicit opinions from these experts on direct that were not expressed in their written

reports.

The Court agrees with Plaintiff that experts must generally testify within the scope of their expert reports or discovery depositions. This principle is implicit in Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(1), which "require disclosures **in advance of trial** of the bases and reasons for an expert's opinions." See Asher v. Unarco Material Handling, Inc., 2008 WL 2596612, at *2 (E.D. Ky. June 25, 2008) (emphasis added).   Additionally, the party that has retained such expert has an ongoing "duty to supplement extend[ing] both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).   However, Plaintiff does not offer any context for its motion or any specific information as to how Defendant's retained experts might stray from the confines of their expert report. Additionally, Plaintiff seeks a broad order prohibiting *any* additional opinions from the Defendant's experts. The Court refuses to speculate as to the nature of any additional opinions which the Plaintiffs' experts might seek to admit. The Court will adhere to and apply Rule 26 and the Federal Rules of Evidence as they relate to permissible expert testimony. See Parrish v. Dollar Gen. Corp., 2016 WL 742925, *3 (W.D. Ky. Feb. 24, 2016). Thus, Plaintiff's motion is **DENIED.**   At trial, the Court will entertain any specific objections by Plaintiff in relation to the scope of Defendant's experts' testimony.

### 7.  Exclude Any Opinions of SHP's Experts on Direct Examination That Were Not Expressed in their Written Reports to at least a Reasonable Degree of Medical Probability.

Plaintiff seeks to also exclude any opinions of Defendant's experts on direct examination that were not expressed in their written reports to at least a reasonable degree of medical probability. Plaintiff also raises this same argument in her Objections to Defendant's Expert Witnesses [DN 162].  In response, Defendant argues that the "reasonable degree of medical certainty" standard does not apply to standard of care experts.   Further, Defendant argues that

18

only the Plaintiff has the burden to offer medical opinions within a reasonable degree of medical certainty.   Defendant maintains that it need only show that the Plaintiff has failed to satisfy her burden which can be done by presenting evidence that something was possible even if an expert did not testify that it occurred within a reasonable degree of medical certainty.   Wilder v. Eberhart, 977 F.2d 673 (1st Cir. 1992)("Defendant need not prove another cause, he only has to convince the trier of fact that the alleged negligence was not the legal cause of the injury.   In proving such a case, a defendant may produce other 'possible' causes of the plaintiff's injury. these other possible causes need not be proved with certainty or more probably than not."); Sakler v. Anesthesiology Associates, P.S.C., 50 S.W.3d 210, 212 (Ky. App. 2001)("We conclude that defendants in medical malpractice actions may introduce expert witness testimony to rebut a plaintiff's expert witness testimony couched in terms of 'reasonable medical probability,' even though the defendant's expert witness's testimony is couched only in terms of 'possibility.' In so deciding, we are persuaded by the reasoning of the United States Court of Appeals for the First Circuit in the case of Wilder v. Eberhart, 977 F.2d 673 (1st Cir.1992), cert. denied 508 U.S. 930, 113 S.Ct. 2396, 124 L.Ed.2d 297 (1993)." Id. at 213); but see Finn v. Warren County, 768 F.3d at 452 (Sixth Circuit noted that defendant's medical expert utilized "the correct standard for expert witness testimony—a reasonable degree of medical certainty.").

The Court agrees with Defendant.   A plaintiff in a negligence action bears the burden of establishing causation. "In contrast, defendants are not required to 'disprove' causation. Instead, they must only produce 'credible evidence which tends to discredit or rebut the plaintiff's evidence' so as to 'convince the trier of fact that the alleged negligence was not the legal cause of the injury.'" Hudson v. CSX Transp., Inc., 2009 WL 4406069, *4 n. 3 (Ky. Ct. App. 2009) (quoting Sakler v. Anesthesiology Assocs., 50 S.W.3d 210, 214 (Ky. Ct. App. 2001)). "Defense experts are not

bound by the 'probability' standard and may introduce testimony 'couched only in terms of 'possibility.'"   Osborne v. Bailey, 2014 WL 6687605, at *4 (Ky. Ct. App. Nov. 26, 2014), review denied (Oct. 21, 2015). Thus, Plaintiff's motion is **DENIED.**

### 8. Exclude Testimony or Argument that the Defendant's Policies were Superseded or Rendered a Nullity by those of the Jail

Plaintiff moves the Court to exclude any testimony or argument that Defendant's policies were superseded or rendered a nullity by those of the Jail because there is no such evidence in the record.   The Defendant responds that there is no such evidence.   At the present time, it appears this motion in limine is **MOOT**, and any specific objection related to this evidence is reserved for trial.

### 9. Exclude Any Evidence or Argument Concerning Mr. Butler's Criminal History

Plaintiff argues that any Mr. Butler's prior criminal history is not properly admissible pursuant to Fed. R. Evid. 404(b)(1) as a prior bad act and Fed. R. Evid. 609 as impeachment by evidence of a criminal conviction. In response, Defendant states that it will need to introduce evidence that Mr. Butler was incarcerated and the circumstances of his arrest to explain his placement on detox and his subsequent treatment.   Specifically, Defendant contends that his prior criminal history impacts where he was placed in the Detention Center, their access to him, and how their knowledge of his history affected his treatment and placement in detox.

In as much as the evidence is relevant to his placement and treatment at HCDC and his knowledge of the sick call procedure, the motion in limine is **DENIED**.   Furthermore, in her Trial Brief and contrary to Plaintiff's representation in the motion, Plaintiff indicates that she is seeking damages for lost power to labor and earn money as to which Mr. Butler's criminal history is also relevant.   Any remaining objections the Plaintiff has should be raised at trial.

**10.   Exclude Any Use of Defendant's Employees' Blatant Violations of Defendant's Policies as a License to Speculate on Mr. Butler's Condition in a Manner that Favors Defendant and its Employees.**

Plaintiff argues that due to Defendant's employees' violation of Defendant's policies and procedures with respect to preparing a drug and alcohol flow sheet and wound care flow sheet, no real record of Mr. Butler's condition on admission to the HCDC or during his incarceration exists. Given this, Plaintiff argues that Defendant's experts should not be permitted to use these policy violations as license to speculate on Mr. Butler's condition in a manner that favors Defendant or its employees.   In response, Defendant notes that Plaintiff fails to refer to any specific evidence that should be excluded.   Additionally, Defendant maintains that the Federal Rules of Evidence does not prohibit its experts from providing opinions regarding Mr. Butler's condition simply because a SHP employee did not follow a SHP policy that would have provided a more complete record.

The Court agrees with Defendant.   Defendant's experts are permitted to provide opinions regarding Mr. Butler's condition. Counsel may cross-examine the experts regarding the lack of the flow sheets and/or medical record.   Accordingly, the Plaintiffs' motion is **DENIED** as to this issue.

### III. DISCUSSION ON DAUBERT-RELATED MOTIONS

Plaintiff filed a Daubert motion styled Plaintiff's Objection to Defendant's Expert Witnesses [DN 162] on June 23, 2016.   Plaintiff objects to (1) any expert's testimony that Mr. Butler's death was caused by a previously unknown medical condition without excluding his illness during his incarceration as a contributory cause; (2) Defendant's experts' opinions that Mr. Butler died of myocarditis; and (3) that SHP's employees acted "appropriately" or satisfied the standard of care. Specifically, Plaintiff objects to the opinions of Dr. George Nichols, Dr. Alan Weder, Dr. Grady Bazzel, Dr. Michael Gelfand, and Nancy James, LPN.   In response to Plaintiff's motion,

21

Defendant filed a Motion to Strike Plaintiff's Untimely <u>Daubert</u> motion. [DN 167].

## A.  Defendant's Motion to Strike [DN 167]

Defendant moves to strike Plaintiff's <u>Daubert</u> motions as untimely. Defendant argues that the untimely filing of the <u>Daubert</u> motions has forced Defendant to both prepare for trial and respond to the motions.   Because the trial of this matter has been rescheduled for April of 2017, the Court **DENIES** the motion to strike.

## B.  Plaintiff's <u>Daubert</u> Motions [DN 162]

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."   Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant.   <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 407 (6th Cir. 2006) (citing <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.   Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Id</u>. Third, the testimony must be reliable. <u>Id</u>.

<u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d 517, 528-29 (6th Cir. 2008).   "Rule 702 guides the trial court by providing general standards to assess reliability." <u>Id</u>.

In determining whether testimony is reliable, the Court's focus "must be solely on

principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." <u>Id</u>. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. <u>Kumho Tire Co.</u>, 526 U.S. at 147.   Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." <u>Kumho Tire Co.</u>, 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence.   <u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d at 530 (citation omitted).

### 1. Motion to Exclude any Expert Testimony that Mr. Butler's Death was Caused by a Previously Unknown Medical Condition without Excluding his Illness during his Incarceration as a Contributory Cause and to Exclude Defendant's Experts' Opinions that Mr. Butler Died of Myocarditis

Plaintiff argues both in this <u>Daubert</u> motion and her motion in limine [DN 161 at 2] that the Court should exclude any evidence or argument that Mr. Butler had a previously unknown medical condition that was the cause of his death without excluding his illness during his incarceration as a contributory cause.   Plaintiff maintains that Defendant's experts fail to adequately apply the differential diagnosis test.

Differential diagnosis is "'[t]he method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the

23

symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history.'" Best v. Lowe's Home Centers, Inc., 563 F.3d 171, 179 (6th Cir. 2009)(quoting Hardyman v. Norfolk & Western Ry. Co., 243 F.3d 255, 260 (6th Cir. 2001) (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 214 (1994))). The Sixth Circuit adopted the "differential diagnosis" test:

> A medical-causation opinion in the form of a doctor's differential diagnosis is reliable and admissible where the doctor (1) objectively ascertains, to the extent possible, the nature of the patient's injury, see id. at 762 ("A physician who evaluates a patient in preparation for litigation should seek more than a patient's self-report of symptoms or illness and . . . should . . . determine that a patient is ill and what illness the patient has contracted."), (2) "rules in" one or more causes of the injury using a valid methodology, and (3) engages in "standard diagnostic techniques by which doctors normally rule out alternative causes" to reach a conclusion as to which cause is most likely. Id. at 760. In connection with the third "rules out" prong, if the doctor "engage[s] in very few standard diagnostic techniques by which doctors normally rule out alternative causes," the doctor must offer a "good explanation as to why his or her conclusion remain[s] reliable." Id. Similarly, the doctor must provide a reasonable explanation as to why "he or she has concluded that [any alternative cause suggested by the defense] was not the sole cause." Id. at 758 n. 27.

Best v. Lowe's Home Centers, Inc., 563 F.3d 171, 179 (6th Cir. 2009).

Plaintiff argues that Mr. Butler reported that he suffered from MRSA, rheumatoic arthritis and gout, and had a rash, was vomiting, detoxing, couldn't walk, was urinating and defecating on himself, and was so sick that he couldn't fill out a medical request or reach a water source. According to Plaintiff, Defendant's experts have cobbled up a theory that Mr. Butler died of "myocarditis." Plaintiff contends that Defendant has a battery of experts who have been hired for the purpose of confusing the Court and the jury between the "cause" of death (sepsis, detoxing, MRSA, the stresses of rheumatoid arthritis and/or gout) versus the "mechanism" of death (a heart allegedly weakened by myocarditis stops). Plaintiff maintains that unless Defendant's experts can "rule out" as a contributory cause whatever was causing and contributing to the signs and

24

symptoms that were clearly observed by the deputy jailers and were neglected for days by Defendant's employees, its experts' opinions as the mechanism of Mr. Butler's death is completely irrelevant. Furthermore, Plaintiff maintains that given the established link between two of Mr. Butler's undisputed medical conditions – MRSA and rheumatoid arthritis – and myocarditis, combined with evidence of the abject neglect of both of these conditions during Mr. Butler's incarceration, it is essential that Mr. Butler's MRSA and rheumatoid arthritis be "ruled out" as contributing causes to his death in general, and to his myocarditis in particular.

In response, Defendant argues that the "causation" opinions of SHP's experts are reliable under <u>Daubert</u> and should not be excluded. Defendant contends that its experts engaged in an extremely thorough differential diagnosis test.   The Court agrees.   Dr. George Nichols, Dr. Alan Weder, and Dr. Michael Gelfand employ the differential diagnosis method by ruling in one or more causes of Mr. Butler's death and then rules out alternative causes. All three experts specifically address Plaintiff's expert's opinion that Mr. Butler died from sepsis, presumably caused by MRSA.   These experts opine that Plaintiff's medical history is not consistent with MRSA or sepsis, but instead with myocarditis likely caused by a virus. In fact, Dr. George Nichols examined the possible causes of Mr. Butler's death utilizing a methodology identical to Plaintiff's expert, Dr. Schluckebier.   Dr. Nichols based his findings primarily on pathological results of the Mr. Butler's heart tissue finding myocyte damage.

Plaintiff complains that the experts did not "rule out" rheumatoid arthritis, thus rendering their methodology unreliable.   From a review of the record, no expert has suggested that Mr. Butler's death was caused by rheumatoid arthritis.   As such, the Court would agree with Defendant that the experts had no reason to provide a detailed discussion of why they were ruling it out as a possible cause.   However, Dr. Alan Weder specifically addressed Mr. Butler's arthritis

25

finding that there was no indication that joint pain itself contributed to his death.

Further, Dr. Weder's reliance on the report of Dr. Hawley for a portion of his opinion does not render his opinion unreliable despite the fact that Dr. Hawley is no longer able to testify. Fed R. Evid. 703 allows an expert to rely on information disclosed to him "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.[1] Rule 703 "'does not predicate admissibility on the source of the facts or data or, in particular, on whether the source is employed by either of the parties.'" Numatics, Inc. v. Balluff, Inc., 66 F. Supp. 3d 934, 949–50 (E.D. Mich. 2014); see also Williams v. Illinois, —— U.S. ——, 132 S.Ct. 2221, 2246, 183 L.Ed.2d 89 (2012) (Breyer, J., concurring) ("Experts ... regularly rely on the technical statements and results of other experts to form their own opinions."); Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 675 (6th Cir. 2010) ("an expert may in some circumstances rely on other experts' testimony—see Fed.R.Evid. 703")). Thus, under Rule 703, Dr. Weder "may base his opinion on reports compiled or statements made by nontestifying people as long as the reports and statements are of a type reasonably relied upon by experts in the relevant field." United States v. Parnell, 2014 WL 4388523, *3 (M.D. Ga. Sept. 5, 2014).   Experts in Dr. Weder's field necessarily and reasonably rely on examinations, opinions, and tests obtained by other doctors, hospitals, and scientist. Id. See also Ryans v. Koch Foods, LLC, 2015 WL 11108937, *4 (E.D. Tenn. July 16, 2015)("an expert may base his opinion on facts or data that would be inadmissible in evidence, including hearsay evidence").

Finally, to the extent that Plaintiff wishes to contest Dr. Hawley and Dr. Nichols' opinion

---

1 "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."   Fed. R. Evid. 703.

regarding Mr. Butler's cause of death, and Dr. Weder, Dr. Gelfand, and Dr. Grady Bazzell's subsequent reliance, such an argument is permissible.   However, the Plaintiff's disagreement on this issue goes to the weight of these experts' opinions, not their admissibility.

### 2. Standard of Care Experts

Plaintiff seeks to exclude three of Defendant's experts' opinions that SHP employees acted "appropriately" or satisfied the standard of care.

First, Plaintiff complains that in Dr. Alan Weder's 10-page long report, he says nothing about the standard of care until the final sentence of his report and cites no standards on which his opinions are based.   A review of Dr. Weder's report reflects that on multiple occasions in his report Dr. Weder opines that SHP acted appropriately under the circumstances presented at the time of Mr. Butler's incarceration. See (Weder Report at 8)("[T]here was noting observed which would raise the question of sepsis for jail personnel, and there was no plausible reason for them to suspect that."); (Weder Report at 9)("I believe that to a reasonable degree of medical certainty, Mr. Butler died of cardiac arrhythmia.   That event was not predictable or preventable by any actions that could have been reasonably taken by Hopkins County Jail personnel."); (Weder Report at 10)("I find that the actions of the medical personnel caring for Mr. Butler fall within the usual standard of care for the conditions that caused his death.").   Dr. Weder arrived at these opinions by reviewing Mr. Butler's medical records, other expert reports, depositions of the witnesses called in this case and relied upon his knowledge and experience as a physician of internal medicine and a professor of Internal Medicine at the University of Michigan.

Second, Plaintiff argues that Dr. Grady Bazzel's testimony should be excluded because Dr. Bazzel makes no mention of SHP's policies and procedures in his report.   According to Plaintiff, Dr. Bazzel only opines that Dr. Henry Davis and SHP's employees acted appropriately in their

treatment of Mr. Butler, despite SHP's employees' record admission of their myriad violations of SHP's policies and procedures.

The record reflects that Dr. Bazzel is the deputy medical director for Correct Care Solutions, one of the largest providers of correctional healthcare in the United States.   He trains physicians, mid-level providers, and nurses on the appropriate management of patients in the correctional setting.   Based on his training, education, and experience, and a review of the medical records and depositions, Dr. Bazzel opined that SHP's staff met all applicable standards of care and acted appropriately in the treatment of Mr. Butler.   As noted above, an expert "may testify regarding the nature, extent, and quality of the medical care [the prisoner] received and opine regarding the effect and cause of her death."   Davis v. Roane Cty., Tenn., 2015 WL 6738174, at *4 (E.D. Tenn. Nov. 4, 2015).   To the extent that Plaintiff criticizes the facts relied upon by Dr. Bazzel or his omission of the violations of the SHP policies by the nurses, the Court finds that these "omissions" are "best addressed through vigorous cross-examination." Davis, 2015 WL 6738174, *7 ("as to Defendants' claims that she ignored the facts of this case, the Court feels that such factual matters, the weight or lack of weight she assigned to them and the effect, if any, on her opinions are best addressed through vigorous cross-examination.").

Third, Plaintiff argues that the expert testimony of Nancy James, LPN, should be excluded because she opines that SHP's nurses met an undefined "standard of care" in their treatment of Mr. Butler.   Plaintiff maintains that Nurse James failed to consider SHP's policies and procedures or the employees violation of those policies during Mr. Butler's incarceration.   Plaintiff contends that the standard of care is defined by SHP's own policies and procedures, not "undefined" standard of care.   Once again, to the extent Plaintiff criticizes the facts relied upon by Ms. James, the Court finds that these "factual matters, the weight or lack of weight she assigned to them and

28

the effect, if any, on her opinions are best addressed through vigorous cross-examination.").
Davis, 2015 WL 6738174, *7

Finally, the Court rejects Plaintiff's argument that the opinions of these experts should be excluded because they failed to address SHP's Policies and Procedures.   As noted previously, the Sixth Circuit has repeatedly recognized that while internal regulations and standard operating procedures are relevant in considering the scope of the duty of care owed, they do not necessarily create or define the precise scope of the duty owed. See Keir v. United States, 853 F.2d 398, 413–14 (6th Cir. 1988); Estes v. King's Daughters Med. Ctr., 59 Fed. Appx. 749, 756–57 (6th Cir. 2003).

## IV. DISCUSSION ON PLAINTIFF'S OBJECTIONS

### A. Plaintiff's Objection to Defendant's Exhibits [DN 160]

The Plaintiff objects to, and moves the Court to exclude from trial, the following exhibits that have been identified by the Defendant.

### 1.   All Court Documents from Criminal Proceedings against Tyler Butler

Plaintiff objects to the Defendant's introduction of "[a]ny and all certified court documents from criminal proceedings against Tyler Butler." See Defendant's Exhibit List No. 11 [DN 150]. Generally, the Court has previously held elsewhere in this Opinion that Mr. Butler's prior criminal history is relevant to his placement and treatment at HCDC, his knowledge of the sick call procedure, and damages for lost power to labor and earn money.

However, the Court is unable to rule on the admissibility of specific documents because the Defendant has not listed the individual exhibits it intends to use in its Final Exhibit List.   The Court cannot rule on the admissibility of exhibits contained in blanket-type exhibit lists.   Exhibit lists should specifically identify the document the party intends to introduce as an exhibit at trial so

29

to enable the opposing party to make an appropriate objection to the document.   Copies of the exhibits to which an objection is made should then be filed with the objections.

Accordingly, **no later than January 9, 2017,** the parties shall file Supplemental Final Exhibit Lists.   **No later than January 30, 2017,** counsel shall file any objections to any exhibit. Copies of exhibits to which an objection is made shall be filed with the objections.   If no objections are filed, the parties will be deemed to have waived any objection to use at trial and will be further deemed to have waived any objection as to the authenticity of any item which is to be offered into evidence.   Counsels' attention is drawn to Local Rule 83.10 regarding marking and designation of trial exhibits.   **No later than February 21, 2017,** counsel shall file all responses to any objections filed.   There will be no replies.

### 2. Report of any Expert Witness Called to Testify or Identified in any Party's Expert Witness Disclosure

Plaintiff objects to the Defendant's introduction of any written reports of the Defendant's experts. For the reasons set forth elsewhere in this opinion, the Plaintiffs' objection is **SUSTAINED** as to the written reports.

### 3. Any and All Medical and Pharmacy Records and Diagnostic Studies of Tyler Butler

Plaintiff objects to the Defendant's introduction of "any and all medical records and diagnostic studies of Tyler Butler" and "[a]ny and all pharmacy records regarding Tyler Butler." [DN 140, Exhibits No. 16 and 17].   As noted above, the Court cannot rule on the admissibility of these exhibits because they are contained in a blanket-type disclosure.

### 4. Any and All Employment Records, or Social Security Records, or Education Records, or Income Tax Documents, including Tax Returns, of Tyler Butler

Plaintiff objects to the introduction of any and all employment records, or social security

records, or education records, or income tax documentation, including tax returns. [DN 150, Exhibits 25, 26, 27, 28].   Plaintiff once again represents that she is not making a claim for lost power to labor and earn income, and as a result, the records are not relevant.   Defendant has no objection to this motion if Plaintiff is not seeking those elements of damages.  However, in Plaintiff's Trial Brief she clearly indicates an intent to assert a claim for lost power to labor and earn money.   As such, Plaintiff's general objection as to these documents is **OVERRULED** to the extent that she is asserting a claim for lost power to labor and earn money.   However, the Court cannot rule on the admissibility of these exhibits because they are contained in a blanket-type disclosure.

### 5.  Any Treatises, Journals, Books, or Other Articles Not Identified in an Expert's Written Report, Except for Purpose of Impeachment.

The Plaintiff objects to the Defendant's introduction of "[a]ny and all documentation, including treatises, journals, books, or other such articles" that are not identified in an expert written report, except for purpose of impeachment.   In response, SHP submits that it will abide by the Federal Rules of Evidence with respect to the introduction of treatises, journals, books, or other articles and expects the Plaintiff to do the same.  Plaintiff's objection is **SUSTAINED**.  The Court would note that in accordance with Fed. R. Evid. 803(18), a statement contained in learned treatises, journals, books, or other articles relied upon by any of the experts cannot be marked or received as an exhibit, but only read into evidence.

### V. DISCUSSION ON DEFENDANT'S OBJECTIONS

## A. Defendant's Objection to Plaintiff's Exhibits [DN 159]

Defendant objects to, and moves the Court to exclude from trial, the following exhibits that have been identified by the Plaintiff in DN 149.

### 1. Photograph of Tyler Butler

Defendant objects to the photograph of Tyler Butler on the grounds that it is not relevant to any of the claims or defenses at issue in the litigation, and alternatively, would be unduly prejudicial to Defendant for the reasons set forth in Defendant's Motion in Limine No. 9. For the reasons set forth elsewhere in this opinion, the Defendant's objection is **OVERRULED**.

### 2. Incident Report Form concerning Mr. Butler dated 4/11/10

Defendant objects to the Incident Report Form to the extent this document is protected from disclosure under the attorney-client privilege, work-product doctrine, and/or any other applicable privilege under Kentucky or Federal Law. Plaintiff withdraws her designation of this exhibit. As such, the Defendant's objection is **SUSTAINED**.

### 3. SHP Report to Corporate of Inmate Death Concerning Mr. Butler Dated 4/11/10

Defendant objects to the SHP Report to Corporate of Inmate Death to the extent this document is protected from disclosure under the attorney-client privilege, work-product doctrine, and/or any other applicable privilege under Kentucky or Federal Law. Plaintiff withdraws her designation of this exhibit. As such, the Defendant's objection is **SUSTAINED**.

### 4. The Final Judgment Entered against Candace Moss and Renee Keller dated 5/8/14

Defendant objects to the Offer of Judgment accepted by Plaintiff and entered against Moss and Keller on the grounds that it is irrelevant, would not aid the jury in the disposition of any of Plaintiff's claims against Defendant, would only tend to confuse the jury with extraneous issues, would be unfairly prejudicial to Defendant, and for all the reasons set forth in its Motion in Limine No. 16. For the reasons set forth elsewhere in this opinion, the Defendant's objection is **SUSTAINED**.

### 5. SHP's Contract with Henry Davis

Defendant objects to its contract with Henry Davis, M.D. on the grounds that it is not relevant to any of the claims at issue in this litigation, would not aid the jury in the disposition of deciding any of Plaintiff's claims, would only tend to confuse the jury with extraneous issues, and would be unduly prejudicial to Defendant. Plaintiff withdraws her designation of this exhibit. As such, the Defendant's objection is **SUSTAINED**.

### 6. Calendar for April 8 – 11, 2010

Defendant objects to the calendar on the grounds that Plaintiff did not identify it in their Fed. R. Civ. P. 26(a)(1) Initial Disclosures or their responses to Defendant's discovery requests. In response, Plaintiff represents that the calendar is merely demonstrative evidence to help the jury understand when and in what order relevant events in this case occurred.   Any charts, drawings, reproductions, tangible objects, documents, or calendars which are to be used in any manner during trial, including demonstrative exhibits, should be exchanged **no later than January 9, 2017**.   Any objections regarding this exhibit can again be raised if necessary.

### 7. All Pleading and Discovery in Other Civil Litigation

Defendant objects to the pleadings and discovery in other jail/SHP litigation on the grounds that it is not relevant to any of the claims at issue in this litigation, would not aid the jury in the disposition of deciding any of the claims at issue, would only tend to confuse the jury with extraneous issues, and would be unduly prejudicial.   Defendant argues that the pleadings and discovery in other jail/SHP litigation should also be excluded for the reasons set forth in Defendant's Motion in Limine No. 11.   Generally, for the reasons set forth elsewhere in this opinion, the Defendant's objection is **SUSTAINED IN PART AND OVERRULED IN PART**. (See Section II(A)(11) *infra*.).   However, as to specific exhibits, the Court cannot rule on the

admissibility of these exhibits because they are contained in a blanket-type disclosure.   [See DN 152-1 (a)-(f).]   Plaintiff should likewise file a Supplemental Final Witness List identifying specific documents she seeks to introduce.

**B. Defendant's Objections to Plaintiff's Witness List [DN 158]**

The Defendant objects to Dr. John Adams and Dr. Ronald Waldridge as witnesses in this matter because Plaintiff did not identify these witnesses in their Fed. R. Civ. P. 26(a)(1) Initial Disclosures, their responses to Defendant's discovery requests, or their expert disclosures. Defendant further argues that that their testimony is not relevant to any of the claims at issue in this litigation, would not aid the jury in disposition of deciding any of Plaintiff's claims against Defendant, would only tend to confuse the jury with extraneous issues, and would be unduly prejudicial.   Defendant notes that Drs. Adams and Waldridge are medical directors at other prisons involved in separate civil litigation, they never provided any care or treatment to Mr. Butler at the HCDC, and they have no personal knowledge of the events or the treatment Mr. Butler did receive.   Defendant further argues that these witnesses' personal knowledge of treatment provided to other inmates at other prisons involved in separate litigation has no bearing on or relation to the care and treatment received by Mr. Butler at HCDC.   It would confuse the jury and cast Defendant in a derogatory light in hopes of inflaming the passions of the jury.

In response, Plaintiff argues that Defendants are not prejudiced by Plaintiff's Supplementation.   Plaintiff indicates that both individuals have been involved in lawsuits with Defendant in which the plaintiffs in those cases demonstrate that their serious medical needs were neglected by Defendant's employees, Defendant's employees violated Defendant's policies and procedures, and Defendant's employees failed to contact Defendant medical directors about an inmate until after the inmate had been hospitalized or had died.   Plaintiff indicates that she intends

to call Drs. Adams and Waldridge as witnesses at trial only in the event that she needs to rebut any testimony of Defendant's witness in which they deny knowledge of prior comparable incidents involving the doctors, or dispute the uncontested facts of prior incidents involving the doctors, or testify contrary to the doctors' deposition testimony in previous litigation. Plaintiff maintains that the doctors can testify about Defendant's practice of staffing jails primarily with nurses unfamiliar with its written policies and practices and unsupervised by an absentee medical director, has caused numerous deaths and near-deaths in jails throughout Kentucky.

Plaintiff states that it should be permitted to ask Defendant's witnesses about inmate deaths in which Defendant's nurses failed to follow its policies and procedure, in which the medical director was not contacted about the inmate until the inmate had died or almost died, and which were not investigated by Defendant or its investigation produced no change in policies, procedures, or training.   If they deny knowledge, or dispute the uncontested facts of prior incidents, or testify contrary to the doctor's deposition testimony in other cases, Plaintiff should be permitted to call the doctors to testify consistent with their deposition testimony as rebuttal witnesses.

For the reasons set forth elsewhere in this opinion, Defendant's objection is **SUSTAINED IN PART AND OVERRULED IN PART**.  As the Court noted above, in pursuing a pattern theory of constitutional violations, evidence of similar incidents of inmates' deaths in jails served by SHP is relevant to whether SHP acted with deliberate indifference to the medical needs of Butler.  While the incidents of these deaths or near-deaths, along with SHP's investigation and changes in training, may be relevant, the fact that lawsuits were filed in those instances is not relevant.  Drs. Adams and Waldridge may not be called in Plaintiff's case-in-chief.  Plaintiff has identified these witnesses as rebuttal witnesses which are not within the scope of Rule 26(a)(1).

See <u>Bennett v. Bd. of Educ. of Washington Cty. Joint Vocational Sch. Dist.</u>, 2011 WL 4753414, *5 (S.D. Ohio Oct. 7, 2011).   Furthermore, these witnesses are not rebuttal expert witnesses whose reports must be submitted within the period set forth in Rule 26(a)(2)(D)(ii). <u>See</u> <u>Teledyne Instruments, Inc. v. Cairns</u>, 2013 WL 5781274, *17 (M.D. Fla. Oct. 25, 2013).

### VI. DEFENDANT'S MOTION FOR LEAVE TO SUPPLEMENT WITNESS LIST [DN 166]

On July 7, 2016, Defendant moved for leave to supplement its witness list to add Jennifer Braizer.   Braizer is an employee of SHP and is designated to testify regarding the training of SHP employees.   Defendant states that the witness was inadvertently omitted from Defendant's original witness list, and the supplement was made immediately upon discovery of the omission.

In response, Plaintiff objects to the addition of Braizer to Defendant's witness list. Plaintiff argues that Braizer is nowhere mentioned in any of the pleadings or discovery in this case, and she has not been deposed.   Plaintiff argues that permitting Defendant to supplement its witness list little more than thirty days before trial to add Braizer will significantly prejudice Plaintiff.   In reply, Defendant notes that if the Court grants Plaintiff's motion to continue, Plaintiff will have several months to take the requested deposition, and SHP would agree to produce her for such deposition at Plaintiff's convenience.   Thus, Plaintiff would not be prejudiced by the requested leave to supplement its witness list.

Because the trial was continued, the Court **GRANTS** Defendant's motion to supplement its witness list.   Discovery is reopened on a limited basis to permit Plaintiff to depose Jennifer Braizer.   **No later than November 1, 2016**, Plaintiff shall depose Jennifer Braizer.

### VII. DISCUSSION OF ISSUES RAISED IN PARTIES' TRIAL BRIEFS

Pursuant to the Court's scheduling order, the parties filed their trial briefs addressing any factual or legal issues that could be anticipated to arise at trial.   The parties have raised numerous

issues that warrant discussion prior to trial.

## A. Plaintiff's Trial Brief [DN 179]

### 1. Training Program

Plaintiff states that the Sixth Circuit has already found as a matter of law that Defendant had no training program at all.   Shadrick v. Hopkins County, 805 F.3d 724, 740 (6th Cir. 2015). Thus, according to Plaintiff, under such circumstances the jury need only determine whether Defendant's failure to train its nurses in meeting their constitutional obligations demonstrated its own deliberate indifference to the highly predictable consequence that a nurse would commit a constitutional violation or that "the unconstitutional consequences of failing to train" were "so patently obvious" that Defendant should be held "liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 740.

The Court disagrees.   In addressing the Plaintiff's deliberate indifference claim, the Sixth Circuit examined the evidence in the light most favorable to the Plaintiff and concluded that "a reasonable jury could find that SHP was deliberately indifferent to the need to train and supervise its LPN nurses to provide adequate medical care to inmates, especially in view of the obvious risk that the Constitution could be violated without such training and supervision." Shadrick, 805 F.3d at 741.   Significantly, the Sixth Circuit held:

> Shadrick produced sufficient evidence to create genuine issues of material fact for trial on all three elements of her § 1983 claim against SHP for failure to train and supervise the LPN nurses. She met SHP's summary judgment motion with evidence that SHP's training program is inadequate for the tasks the LPN nurses are required to perform, that the inadequacy resulted from SHP's deliberate indifference, and that the inadequacy actually caused, or was closely related to, Butler's injury. Summary judgment on the § 1983 claim was unwarranted, thus requiring us to reverse and remand the case for further proceedings on this claim.

Shadrick, 805 F.3d at 744.   Thus, contrary to Plaintiff's argument, the Sixth Circuit has not

resolved this issue, but remanded so a jury could.

### 2. Causation

Plaintiff contends that there is no issue as to causation because there is no evidence that Mr. Butler would have died had he not been incarcerated in the HCDC and dependent upon Defendant's care.   Vincent v. Warren County, 629 Fed. Appx. 735 (6th Cir. 2015).   As discussed above, while it is undisputed the Plaintiff died while incarcerated at the HCDC, there is a genuine dispute as to whether there was a breach of duty, an injury, or whether the injury was caused by Defendant's actions.   See II(B)(3)(*infra*).   Thus, contrary to Plaintiff's argument, there is a genuine dispute of material fact regarding whether Mr. Butler suffered a fatal injury due to his confinement in the HCDC.

## B. Defendant's Trial Brief [DN 183]

### 1. Negligent Training and Supervision Claim

Defendant argues that Plaintiff did not plead negligent training and supervision, but only negligence; and therefore negligent training and supervision is not a proper claim.   Defendant notes that the Kentucky Court of Appeals in Rankin v. Jefferson Special Police, Inc., 2013 WL 5312504 (Ky. Ct. App. Sept. 20, 2013), refused an instruction on negligent supervision and training where a plaintiff failed to allege those elements but rather only generally alleged that the defendant was negligent. Id. at *3 ("The torts of negligent training and supervision were first recognized in Smith v. Isaacs, 777 S.W.2d 912, 914 (Ky. 1989). They are separate torts from general negligence.").

In Plaintiff's second amended complaint, Plaintiff alleges that "[t]he offenses described below resulted from the failure of the County and the supervisory officials . . . to employ qualified persons for positions of authority, and/or to properly train and supervise the conduct of such

persons after their employment, and/or to promulgate appropriate operating policies and procedures. . . ." (Second Amended Complaint at ¶ 9 [DN 129]).   Accordingly, the Court finds that the second amended complaint sufficiently pleads a negligent training and supervision claim.

Defendant further argues that entry of the judgment against Candace Moss and Renee Keller and subsequent satisfaction of that judgment prohibits Plaintiff from asserting a claim of vicarious liability against SHP and limits the damages Plaintiff will be able to recover.   Day v. Davidson, 951 P.2d 378, 381-383 (Wyo. 1997); Manjarres v. Cont'l Tire N. Am., Inc., 2007 WL 779725 (D. Ariz. 2007); Waddle v. Galen of Ky. Inc., 131 S.W.3d 361 (Ky. App. 2002)("The appellants vicarious liability claim against Cumberland was derived solely from the alleged negligence of Dr. Brown. Accordingly, the release executed in favor of Dr. Brown inured to the benefit of Cumberland to bar the appellants vicarious liability claim.").   It would appear to the Court that Plaintiff seeks to hold SHP liable for its own negligence in failing to train or supervise. See, e.g., Vincent v. Warren County, 629 Fed. Appx. 735 (6th Cir. 2015)(plaintiff seeks to hold jailer liable for his own alleged negligence in failing to train and supervise deputy jailers).

### 2. Deliberate Indifference

Defendant represents that in order to prove that SHP is deliberately indifferent to Butler's medical needs, Plaintiff will need to prove that a SHP's staff member violated Butler's constitutional rights.   According to Defendant, because Angela Pleasant and Betty Dawes were dismissed on the merits, the only staff members who could be found to have violated Butler's rights are Candace Moss or Renee Keller.   Defendant maintains that its staff did not violate Butler's constitutional rights.   Defendant contends that if the Plaintiff proves that Candace Moss or Renee Keller violated Butler's rights, Plaintiff will then be required to prove that SHP is responsible for that violation by proving the elements of the claims against an institution.

Plaintiff has not addressed the issue of whether she is required to prove the deliberate indifference of any employee of SHP before she can hold SHP liable on a failure to train theory.   However, the Plaintiff did not tender a jury instruction on the individual liability of Moss, Keller, or any other SHP employee.

"[T]he Sixth Circuit has repeatedly held that municipal defendants cannot be held liable if no constitutional violation by its employees has been established."   Modd v. County of Ottawa, 2012 WL 5398797, at *20 (W.D. Mich. Aug. 24, 2012)("Relieving plaintiffs of the obligation to show a culpable state of mind by any human being would certainly change the face of section 1983 litigation in this circuit.   Unfortunately for plaintiff, such a result contravenes settled authority, which requires a showing both of individual indifference and that the municipality's policies were the motivating force behind that violation.")(citing Meier v. County of Presque Isle, 376 Fed. Appx. 524, 530–31 (6th Cir. 2010); Denning ex rel. Denning v. Metro. Gov't of Nashville, 330 Fed. Appx. 500, 506 (6th Cir. 2009); Estate of Harbin v. City of Detroit, 147 Fed. Appx. 566, 572–73 (6th Cir. 2005); Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001)). See also Lawrence v. Madison County, 2016 WL 1306394, at *13 (E.D. Ky. Mar. 31, 2016); Holt v. Campbell County, Ky., 2013 WL 5410482 (E.D. Ky. Sept. 25, 2013); Hughes v. Campbell County., Ky., 2015 WL 3649824, at *7 (E.D. Ky. June 11, 2015)("The claim against SHP also fails because a plaintiff cannot proceed against a corporate entity under § 1983 without showing an actual violation of his constitutional rights.").   In fact, "the Sixth Circuit considers the issues of individual liability and municipal liability to be 'inextricably linked.'" Modd, 2012 WL 5398797, at *20 (W.D. Mich. Aug. 24, 2012)(citing Cooper v. County of Washtenaw, 222 Fed. Appx. 459, 473 (6th Cir. 2007)).

This law is applicable to failure to train cases brought against a municipality or corporate entity.  See Crocker ex rel Estate of Tarzwell v. City of Macomb, 119 Fed. Appx. 718, 724 (6th Cir. 2005) ("If the plaintiff fails to establish a constitutional violation by an individual officer, the local government unit cannot be held liable for a failure to train under § 1983."); Estate of Harbin v. City of Detroit, 147 Fed. Appx. 566, 572 (6th Cir. 2005)("a municipality's failure to train may be the moving force behind a resulting injury but cannot be an injury in and of itself."); Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001)(holding that analysis of whether the municipal defendant failed to provide its jail officers with adequate training is unnecessary when the plaintiff-detainee fails to establish that the officers committed a constitutional violation); Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001)(declining to consider whether the municipal defendant failed to provide adequate training to its jail officers because plaintiff-detainee "cannot show that he suffered an underlying constitutional violation").

Therefore, to succeed in her claim against SHP under § 1983, Plaintiff must show that (1) a SHP employee deprived Mr. Butler of his constitutional rights and (2) SHP is responsible for that deprivation.  Lawrence v. Madison Cty., 2016 WL 1306394, at *13 (E.D. Ky. Mar. 31, 2016)(citing Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)).

Finally, whether Defendant is entitled to an apportionment instruction and whether Plaintiff is entitled to a spoliation of evidence instruction will be decided at trial.

Given the Court's decision with respect to some of the legal issues presented in the parties' trial briefs, the parties will need to file supplemental jury instructions to aid the Court in properly instructing the jury.  **No later than March 13, 2017**, the parties shall file supplemental jury instructions.

41

## VIII. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** motions in limine filed by Defendant Southern Health Partners [DN 157] and by Plaintiff [DN 161] are **GRANTED IN PART AND DENIED IN PART** consistent with this opinion;

**IT IS FURTHER ORDERED** that the Defendant's objection to Plaintiff's witness list [DN 158] is **OVERRULED.**

**FURTHER** that Plaintiff's objection to Defendant's witness list [DN 162] is **SUSTAINED IN PART AND OVERRULED IN PART** consistent with this opinion.

**FURTHER** that Plaintiff's objection to Defendant's exhibit list [DN 160] and Defendant's objection to Plaintiff's exhibit list [DN 159] are **SUSTAINED IN PART AND OVERRULED IN PART** consistent with this opinion.

**FURTHER no later than January 9, 2017,** the parties shall file Supplemental Final Exhibit Lists. Any charts, drawings, reproductions, tangible objects, documents, or calendars which are to be used in any manner during trial, including demonstrative exhibits, should be exchanged by this date as well.  **No later than January 30, 2017,** counsel shall file any objections to any exhibit.  Copies of exhibits to which objection is made shall be filed with the objections.  If no objections are filed, the parties will be deemed to have waived any objection to use at trial and will be further deemed to have waived any objection as to the authenticity of any item which is to be offered into evidence.  Counsels' attention is drawn to Local Rule 83.10 regarding marking and designation of trial exhibits.  **No later than February 21, 2017,** counsel shall file all responses to any objections filed.  There will be no replies.  **No later than March 13, 2017**, the parties shall file supplemental jury instructions.

**FURTHER** that Defendant's motion to strike Plaintiff's untimely <u>Daubert</u> motions [DN

167] is **DENIED**.

      **FURTHER** that Defendant's motion for leave to supplement its witness list [DN 166] is

**GRANTED**.   Discovery is reopened on a limited basis to permit Plaintiff to depose Jennifer

Braizer.   **No later than November 1, 2016**, Plaintiff shall depose Jennifer Braizer.

                                      **Joseph H. McKinley, Jr., Chief Judge**
                                        **United States District Court**

cc: counsel of record

                                                August 31, 2016